### ELY HUNT and WILLIAM B. NELSON *v.* HOBOKEN LAND AND IMPROVEMENT CO.

The court will not consider an objection presented on appeal, which, if taken at the trial, might have been obviated by the respondent. This rule illustrated and applied.

The court will not, on a question of fact, disturb the finding of a jury, unless clearly against the weight of evidence.

A judgment of this court, on appeal, reversing a judgment of the Marine, or a district court, for the plaintiff, not predicated on the merits of the controversy, is no bar to another action for the same cause. Its effect is merely to remit the parties to their original rights and obligations.

The statute (2 R. S. p. 92, § 1), regulating the course of steamboats which "meet each other" on any waters within the jurisdiction of this state, does not apply to steamboats whose course is at right angles to each other. In such a case, when a collision occurs, the question of liability therefor depends upon the question of negligence, and is to be determined by the general considerations which govern such questions, not by the statute regulation.(a)

APPEAL by defendants from a judgment entered on a ver·dict of a jury. This was an action to recover damages for an injury occasioned to the Manhattan, the plaintiffs' steamboat, by a collision with the James Rumsey, the defendants' ferryboat. The Manhattan is a Hudson river steamboat. On the 13th of June, 1853, she left her pier at the foot of Robinson street, and proceeded up the North River. About Canal street it met the.

(a) See 3 E. D. Smith's Rep. 144.

James Rumsey, the defendants' ferryboat, crossing from Hoboken to New York city. Their courses, if continued, would cross each other at right angles. As the boats were then proceeding, a collision was inevitable, and to avoid this the Manhattan turned her bows to the west, so as to pass under the stern of the James Rumsey. The James Rumsey also altered her course at about the same time; but, according to the testimony of the Manhattan's pilot, a little after, turning her bows to the right, down the river, so as to pass the Manhattan on her left side. The result was, that the James Rumsey struck the Manhattan on her larboard bow, injuring her so seriously as to make it necessary for her to abandon her trip, and return to New York for repairs. It was for damages for this collision that this action was brought.

This action was originally brought in the Marine Court, and a judgment rendered for the plaintiffs; but, on appeal to this court, that judgment was reversed for error in the charge of the judge. A new action was then commenced in this court, to which the defendants plead, as one of their defences, the former judgment in bar.

Upon the trial of the cause, the plaintiffs' counsel asked of Hazard Morey, the pilot of the Manhattan, the question:

"What was a proper course for a Hoboken ferryboat to take in crossing the river from Hoboken to New York?"

The question was objected to, on the ground that there was no evidence to show that the witness was acquainted with the course of the ferryboats. The witness then stated that he was acquainted with the usual course adopted by the ferryboats; whereupon the objection was overruled, and the evidence admitted. The plaintiffs' counsel also asked the following question of one George Lester, and a similar question, in a little different form, of Hazard Morey:

"What is the custom or course of navigation among pilots of steamboats, when their vessels are meeting at right angles?"

This question was objected to by the defendants' counsel, on the ground that it was a question of law fully provided for by

statute.* The objection was overruled, and an exception taken. The defendants, to sustain their defence, offered an exemplified copy-record of a judgment-roll in the Common Pleas, reversing the prior judgment for the plaintiffs in the Marine Court, as a bar to this action. It was excluded by the court, and an exception taken.

There was, also, some contradictory evidence upon the question as to which party was guilty of negligence. This question was left to the jury under the direction of the presiding judge, to whose charge no exception was taken, and a verdict was rendered for the plaintiffs for $550. From the judgment entered on this verdict the defendants appealed.

*Cambridge Livingston,* for the appellants.

*Dennis McMahon,* for the respondents.

BRADY, J.—The first point presented by the appellants is not sustained by the objection taken on the trial. There was no objection to the testimony of the witness on the ground that he was not an expert, or that there was no evidence of his capacity as such. The objection was, that there was no evidence to show that he was acquainted with the course of the ferryboats; and thereupon, to meet it, the witness was interrogated as to that course, and answered that he was acquainted with it. The objection was then overruled by the presiding judge. That was, perhaps, unnecessary, inasmuch as the witness by his testimony removed the objection. He *was* acquainted with the course of the ferryboats, and thus possessed the only qualification required by the counsel for the defendants. We have held, in accordance

---

* The section of the statute referred to is as follows: "Whenever any steamboats shall meet each other on the waters of the Hudson River, or on any other waters within the jurisdiction of this state, each boat so meeting shall go towards that side of the river or lake which is to the starboard, or right side of such boat, so as to enable the boats so meeting to pass each other with safety." 2 R. S. 92, § 1, (4th ed.), marg. paging, 1 R. S. 683.

with the rule which prevails in all the courts, that we will not consider an objection presented on appeal, which, if taken at the trial, might have been obviated by the respondent, and that rule must be applied to the objection which is the subject of the first point.

The third, fourth and fifth points must be decided against the appellants. The verdict was not clearly against the weight of evidence, and cannot be disturbed for that reason. The questions submitted to the jury were questions of fact, peculiarly and exclusively within their province, to be determined by them upon the legal rules suggested on the trial, which should govern their deliberations. There are few cases presented in courts of justice in which a contrariety of testimony is not given, and this case is not within the exception. For these reasons, unless the presiding judge erred in declaring the law, the finding is conclusive.

The judgment of the Common Pleas, rendered on the appeal from the Marine Court, was not conclusive. It was not predicated on the merits of the controversy. The appeal was not upon the absence of any cause of action, but for errors of law committed by the court below, which were corrected, the judgment reversed and the parties remitted to their original rights and obligations. This is expressly adjudicated in this court (*Ellert* v. *Kelley*, 10 How. 392), and renders the consideration of the question, whether section 330 applies to appeals from the Marine and justices' courts, unnecessary. If the judgment of this court, on that appeal, had been otherwise, the proposition of the defendants' counsel would be incontrovertible, and that judgment a bar to this action.

No exception to the charge of the presiding judge was taken, but the appellants insist, in their second point, that he erred in permitting testimony to be given as to " the ·custom or course of navigation among pilots when their vessels are meeting at right angles," inasmuch as the statute and the common law defined what their course should be, and insists also that it was a question of law. We have no hesitation in adopting the view of the

statute expressed by Judge Woodruff, in delivering the opinion on the appeal from the Marine Court, and in his charge to the jury in this case. When vessels meet at right angles, and a collision occurs, the question presented is one of negligence, and depends upon the general considerations which govern such questions, and not upon the statute regulation upon which the defendants rely. If steamboats meet on lines parallel to each other, whether proceeding up and down a river, or crossing it diagonally, the statute applies equally to them; and it becomes incumbent upon them each to go towards that side of the river which is to the starboard or right of such boat, as required by the statute. The observance of that statute under such circumstances, where it is not impossible, would, it seems, obviate a collision beyond all question; but, when vessels meet at right angles, the observance of such a rule might often result in the very catastrophe the statute was designed to prevent. It cannot be denied, with any propriety, that if a steamboat be proceeding down a river, and is met at right angles by one crossing it, the effect of each going to starboard might, in many instances, throw the vessels together by the sheer which invariably follows from such management. The consideration of that fact alone, without reference to the nautical rule on the subject, would seem to reject the theory, that in such instances the statute must apply. Vessels are to meet each other head to head or bow to bow to induce a compliance with the statute, and the extension of its provisions to any other situation of vessels, in the absence of proof showing its utility and safety, would be a dangerous exercise of judicial power. All these elements went to the jury in unexceptionable form. They were instructed not only on the legal propositions involved, which were correctly stated, but upon the questions of fact upon which they were to pass. The evidence objected to was in perfect harmony with the rule adopted by the court, and its reception unavoidable. The objection was therefore not well taken, and there being nothing in the bill of exceptions which will justify us in disturbing the verdict the judgment must be affirmed.